## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RHONDA MARTIN**                                          **CIVIL ACTION**
**BROOKS**

**VERSUS**                                                      **NO. 15-44-JWD-RLB**

**CAROLYN COLVIN,**
**COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

## NOTICE

     Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

     Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

     **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 15, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

RHONDA MARTIN                                    CIVIL ACTION
BROOKS

VERSUS                                           NO. 15-44-JWD-RLB

CAROLYN COLVIN,
COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Rhonda Martin Brooks (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-4), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **VACATED** and Plaintiff's appeal be **REMANDED** back to the Commissioner for further proceedings consistent with this opinion.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 2, 2013, alleging disability beginning on October 19, 2005, based on chronic low back pain, lumbar radiculopathy,

fibromyalgia, surgical fusion, chronic neck pain, degenerative discs and collapsed discs. (Tr. 45, 102-05).  Plaintiff's application was initially denied by an Administrative Law Judge, who first held an administrative hearing (Tr. 31-44) before issuing an unfavorable decision on May 29, 2014. (Tr. 18-26).  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 2, 2014. (Tr. 1-4).  The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even

if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the

impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.     Plaintiff last met the insured status requirements on March 31, 2011.

2.     Plaintiff did not engage in substantial gainful activity between her alleged onset of October 19, 2005 and March 31, 2011.

3.     Plaintiff suffered from the following severe impairments: degenerative disc disease and obesity.

4.     Plaintiff did not meet or medically equal a listing.

5.     Plaintiff retained the residual functional capacity (RFC) to perform light work with occasional overhead reaching.

6.     Plaintiff was unable to perform any past relevant work.

7.     Plaintiff was a younger individual.

8.     Plaintiff had a limited education and was capable of communicating in English.

9.     The transferability of job skills was not material to the ultimate determination of disability.

10. Considering Plaintiff's age, education, work experience and RFC, there are jobs existing in significant numbers in the national economy that Plaintiff could perform.

11. Plaintiff was not been under a disability through March 31, 2011, as defined by the Social Security Act.

(Tr. 20-26).

## IV.   DISCUSSION

On appeal, Plaintiff raises the following arguments.  First, Plaintiff suggests that the ALJ erred at Step 2 in failing to find certain cervical, lumbar, and sacroiliac impairments were severe. Second, Plaintiff claims that the ALJ erred in evaluating the medical evidence of record.  Third, the ALJ erred, Plaintiff suggests, by failing to incorporate all of her limitations into the RFC. Next, Plaintiff argues that the ALJ erred by relying on the GRIDS to find she could perform a significant number of jobs existing in the national economy.  Finally, Plaintiff complains that the ALJ erred in finding she lacked credibility. (R. Doc. 11 at 1).

### A.   Substantial Evidence Does Not Support the ALJ's Step 2 Finding

At step 2 of the sequential evaluation process the Commissioner must determine whether the claimant's "impairment or combination of impairments" is severe.  According to the regulations, if the claimant does "not have any impairment or combination of impairments which significantly limits" his or her "physical or mental ability to do basic work activities," the Commissioner "will find" the claimant does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4)     Use of judgment;

(5)     Responding appropriately to supervision, co-workers and usual work situations; and

(6)     Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b)(1)-(6).

Despite the Regulation's more stringent language, the Fifth Circuit and others have clarified: "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992) (step 2 only requires a "*de minimis* showing"); *Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) ("only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process.") (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint"). "[B]ecause step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004) (citing SSR 85–28, 1995 WL 56856, at *4 (Jan. 1, 1985) ("Great care should be exercised in applying the not severe impairment concept.")).

"The severity determination is based solely on medical factors." *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007). The claimant's "age, education, and work experience" cannot be considered. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, Plaintiff's medical records indicate diagnoses of degenerative disc disease, cervical radiculopathy (Tr. 217),

shoulder impingement syndrome and tendinitis of the left shoulder (Tr. 832), cervical

spondylosis and right-sided facet arthropathy, status-post bi-level cervical fusion, sacroiliac joint

dysfunction, lumbar radiculopathy and obesity. (Tr. 217, 260, 423, 832, 255). After a brief

discussion of the obesity regulations, the ALJ only found that Plaintiff's degenerative disc

disease and obesity were severe impairments.  As discussed below, this finding was in error.

The record shows that Plaintiff's shoulder impairments relating to her cervical conditions

caused more than a slight abnormality.  Examination of Plaintiff's left upper extremity often

revealed diminished sensation and numbness in Plaintiff's left hand and fingers (Tr. 261, 254,

253, 252, 248, 247, 244, 240, 236, 227, 224, 223, 221, 218, 217, 216), as well as weakness and

reduced grip strength (Tr. 262, 537, 531, 679, 748).  Pain originating in Plaintiff's cervical spine

radiated down "her left shoulder, left tricep, left upper extremity, and into the left hand on

occasion." (Tr. 265); (Tr. 361) (cervical pain "radiates down the left posterior tricep area."); (Tr.

362) ("Her chief complaint is headaches, neck pain with left shoulder pain with radiating pains in

the left upper extremity."); (Tr. 367) (neck pain radiates to her left arm); (Tr. 531) (complains of

neck and left upper extremity pain); (Tr. 680) (cervical pain radiating to the upper extremities);

(Tr. 679) (tenderness starting in the cervical spine and extending out to the upper extremities).

Plaintiff's treating physician, Dr. Jorge Isaza, advised Plaintiff to avoid any overhead

work and not to lift more than 10 pounds. (Tr. 370, 734).  Both Dr. Isaza and Dr. Gray Barrow

limited Plaintiff from performing overhead activities throughout the relevant time period as well

as including certain lifting restrictions. *See, e.g.*, *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1107

(C.D. Cal. 2008) ("When, a claimant's impairments limit her to medium work activity, such

impairments are by definition 'severe' since they have more than a minimal impact on the

claimant's ability to lift, which is a basic work activity."); *Pickering v. Chater*, 951 F. Supp. 418,

424 (S.D.N.Y. 1996) (claimant's 20 pound lifting restriction "amounts to a step 2 finding that Pickering suffers from a severe physical impairment that significantly limits her ability to perform basic work activities"); *Camacho v. Apfel*, No. 1998 WL 813409, at *7 (E.D.N.Y. July 22, 1998) ("Dr. Graham stated that plaintiff might have problems with lifting due to back pain. Since lifting is itself a basic work activity, a limitation in that regard requires a finding of a severe impairment.") (citation omitted).  And so, Plaintiff's shoulder impairments relating to her cervical conditions caused more than a slight abnormality and should have been found severe.

The Court will determine whether any severe impairments and resulting limitations, although not found present at Step 2, are adequately accounted for in the RFC thus rendering any error harmless.  As discussed below, the limitations resulting from these impairments were not properly accounted for by the ALJ.  As substantial evidence does not support the RFC determined by the ALJ, these errors were not harmless.

**B.      Residual Functional Capacity**

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163–64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate

only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343–44.

The ALJ found Plaintiff was not entirely credible, rejected the opinion of her treating physician, Dr. Gray Barrow, and determined she was capable of performing light work with occasional overhead reaching.

As support for his findings, the ALJ gave the following reasons: (1) Plaintiff reported "walking daily" for exercise; (2) "she reported no medication side effects"; (3) "[T]here is evidence that the claimant is not taking medication as prescribed"; (4) Plaintiff's "pain has steadily gotten better"; and (5) "Radiological imaging," specifically "Exhibit 16F/13[,] indicates that the claimant's complaints are not congruent with the available imaging." (Tr. 22-24). The ALJ further rejected or ignored the opinions of two of Plaintiff's treating physicians limiting her to the performance of sedentary work without overhead reaching. As discussed below, the ALJ's credibility finding and his weighing of the medical opinions are either incorrect or not supported by substantial evidence. By extension, the ALJ's RFC and ultimate disability finding are also not supported by substantial evidence.

### (1)   Daily Walking

Citing two treatment records (Tr. 307, 319/402[1]), the ALJ mentions on six separate occasions that Plaintiff reported "walking daily" as exercise. (Tr. 22) ("she reported that she enjoyed walking"; "she was able to walk daily"); (Tr. 23) ("she enjoys walking daily"; "she has been able to exercise by walking"; "walks for exercise"); (Tr. 24) ("the claimant admitted walking for exercise").

---

[1] The ALJ suggests that there are two "October 2011 exams" reporting that Plaintiff walks for exercise, citing "Exhibit 7F/10 and 4F/27." (Tr. 22); (Tr. 319, 402). However, Exhibit 7F/10 and Exhibit 4F/27 are the same exam repeated twice in the record. (Tr. 319, 402).

To begin, both of the treatment records relied on by the ALJ occurred after Plaintiff's date last insured. (Tr. 307) (June 2012); (Tr. 319, 402) (October 2011).  In other words, the ALJ does not cite to, and the Court is unaware of, any treatment records indicating that Plaintiff walked for exercise during the relevant time period.

Moreover, none of the treatment records cited by the ALJ supports his conclusion that Plaintiff walked daily for exercise or was capable of standing and walking for 6 hours, as is required by light work.  In October of 2011, Plaintiff's treating physician, Dr. Barrow stated that he "discussed exercise" with Plaintiff and that she "enjoys walking." (Tr. 319, 402).  The frequency or duration of any walking is never indicated.  In June of 2012, over a year after her date last insured, Dr. Barrow stated, "We discussed exercise. She tries to walk daily." (Tr. 307).  Again, the duration of any walking is not apparent.  And the fact that Plaintiff "tries to walk daily," merely suggests that she is making the effort.  It does not support an ability to stand and/or walk for 6 hours in an 8-hour day.

(2)    **No Medication Side Effects**

The ALJ also claims that Plaintiff has "reported no medication side effects."  This is not supported by the record.  On multiple occasions, Plaintiff has reported side effects (Tr. 306, 422, 727) caused by her medications and has had to change her medications because of those side effects. (Tr. 306, 422, 727); (Tr. 258) (Lyrica discontinued because it caused headaches); (Tr. 244) (Duragesic patch discontinued due to "nausea, vomiting, and itching."); (Tr. 243) (Plaintiff was allergic to Dilaudid and was unable to take the medication.); (Tr. 239) ("She takes Avinza 60mg a day and Panlor SS for breakthrough pain, but it is making her itch."); (Tr. 233) (Lunesta discontinued due to side effects); (Tr. 211, 725) (Savella discontinued as intolerable).

### (3)   Non-Compliance with Medications

The ALJ discredited Plaintiff's allegations of pain partly because he found that she was "not taking her medications that often" and "not taking medication as prescribed." (Tr. 22, 24). As support for these findings, the ALJ relied on an October 28, 2011 exam note, indicating: "She continues to rely on Opana 5mg up to three times a day as needed. She doesn't take it that often. She also occasionally takes Valium 5mg at night to help her sleep." (Exhibit 4F/27, Tr. 319, 402).

The ALJ, however, ignores the fact that Plaintiff was prescribed Opana and Valium as needed (as opposed to any specific timeframe), in addition to her other medications. (Tr. 319, 402) (claimant was prescribed Metformin and Levothyroxine; she also took Opana and Valium, as needed).  In addition, the treatment note regarding Opana indicates that Plaintiff does not take it <u>as often as three times a day</u>, but does not provide any indication of actual frequency.  The note further indicates that Plaintiff was taking Valium occasionally, but likewise does not indicate the frequency.  Furthermore, there is nothing to indicate that Plaintiff was not taking this medication as prescribed.  This particular finding lacks support from the record.

### (4)   Steady Improvement of Symptoms

Without pointing to any supporting evidence, the ALJ found that Plaintiff's pain had steadily improved. (Tr. 22).  While the record shows periods of temporary improvement or relief (Tr. 310, 430, 431, 440, 455), it does not support the ALJ's finding that her "pain has steadily gotten better." (Tr. 22).  Instead, Plaintiff continued to complain of severe or increased pain throughout the relevant time period. (Tr. 415, 418, 420, 725, 727).

In an August 20, 2008 Periodic Medical Report, Dr. Barrow noted that Plaintiff continued to suffer "moderate to severe neck, upper back, and head pain," despite cervical spine surgery.

(Tr. 471).  In June of 2009, Plaintiff told doctors she was having "increased pain in her neck and mid back and lower back radiating into her left lower extremity." (Tr. 454).  On September 24, 2010, Dr. Barrow reported that Plaintiff's symptoms had only "worsened" since 2009. (Tr. 424). This increase is consistent with Plaintiff's December 2009 should injury, which occurred during physical therapy. (Tr. 209, 434, 437).  On March 14, 2011, just days before she was last insured, Plaintiff told her treating physician that her pain had "increased significantly." (Tr. 420).

        **(5)**        **Radiological Findings**

The ALJ relied on a single imaging of Plaintiff's thoracic spine from July of 2010 to find that Plaintiff's radiological imaging is not consistent with her complaints." (Tr. 24) ("Exhibit 16F/13 indicates that the claimant's complaints are not congruent with the available imaging."); (Exhibit 16F/13, Tr. 725).  The imaging cited and relied on by the ALJ found that Plaintiff's thoracic spine showed "some inflammation," but "no evidence of disk herniation" and overall, the thoracic spine was "within normal limits." (Tr. 725).  However, Plaintiff has never claimed thoracic spine issues and this single piece of evidence cannot constitute substantial evidence supporting the ALJ's decision.

Instead, Plaintiff has alleged disability based on diseases of her cervical and lumbar spine.  Consistent with her allegations, images of Plaintiff's lumbar and cervical spine show significant abnormalities. (Tr. 330, 772) (October 2011 MRI of the lumbar spine shows moderate disc degeneration with partial collapse, narrowing of the spinal canal and bilateral foraminal narrowing); (Tr. 729) (January 4, 2010 MRI of the left shoulder shows AC joint arthritis with tendinitis); (Tr. 733) (August 31, 2009 x-ray of the cervical spine showed increased osteophyte formation); (Tr. 735) (March 2, 2009 x-ray of the cervical spine showed facet arthropathy); (Tr. 741) (April 16, 2008 MRI of the lumbar spine found endplate edema at the L5-S1, desiccation at

L4-L5, facet hypertrophy at L4-L5 and L5-S1, but no compression); (Tr. 770) (October 1, 2010

MRI of the pelvis indicated degenerative disc disease at L5-S1); (Tr. 265, 364, 679, 772)

(September 15, 2005 MRI of the cervical spine found disc bulging with osteophyte slightly

indenting the thecal sac, hypertrophic facet arthropathy and mild foraminal compromise and

cervical radiculopathy with disc disease).

### (6)    Medical Opinions of Record

Plaintiff's treating physicians, Dr. Gray Barrow and Dr. Jorge Isaza, both found that

Plaintiff was capable of performing sedentary work, and that she should avoid overhead

reaching, throughout the relevant time period. (Tr. 209-10, 226, 370, 454, 715, 753).  The ALJ,

however, rejected Dr. Barrow's opinion because Plaintiff (1) had undergone "conservative

treatment," (2) "exhibited good pain relief" and (3) "walks for exercise." (Tr. 23).

As previously discussed, substantial evidence does not support the ALJ's finding that

Plaintiff experienced a steady improvement in her symptoms or that she otherwise participated in

exercise that was inconsistent with her treating physician's opinion.  Moreover, Plaintiff's

doctors treated her with multiple steroid injections, physical therapy and surgical intervention

because "conservative treatment has not helped." (Tr. 359); (Tr. 336-37) (anterior cervical fusion

(Tr. 642, 827) (November 8, 2010 surgery to correct left shoulder impingement syndrome,

rotator cuff tear and AC joint arthritis/pain); (Tr. 310, 406, 443, 470, 823) (steroid injection); (Tr.

823, 826) (physical therapy recommended).  As such, the record does not support the ALJ's

decision to discount Dr. Barrow, as Plaintiff's treatment was more than conservative. *Moore v.*

*Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (claimant's "limited use of prescription medications

and over-the-counter Tylenol" was considered conservative treatment); *Avery v. Colvin*, 605 F.

App'x 278, 280 (5th Cir. 2015) ("nonoperative conservative treatment"); *Taylor v. Colvin*, 2014

WL 37250, at *12 (E.D. La. Jan. 3, 2014) ("plaintiff received conservative care in the form of prescription medication and physical therapy"); *Jones v. Bowen*, 1987 WL 6578, at *3 (E.D. La. Feb. 9, 1987) (when "conservative treatment consisting of medication, heat therapy, and exercise" did not improve claimant's knee pain, claimant underwent surgery).  As such, these reasons for discounting Dr. Barrow's opinion do not provide substantial evidence supporting the ALJ's decision.

The ALJ additionally discredited Dr. Barrow's opinion because: (1) Dr. Barrow did not "have the benefit of reviewing the other medical reports contained in the current record"; (2) "there is no evidence that Dr. Barrow is familiar with the Agency's rules, regulations, and definitions regarding disability;" (3) "the opinion expressed by Dr. Barrow is conclusory"; and (4) "Dr. Barrow's reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness." (Tr. 23-24).

To begin, the record indicates that Dr. Barrow was both aware of and in contact with Plaintiff's other treating physicians. (Tr. 206, 208, 255, 257, 258, 261, 263, 264, 265-66, 391). Dr. Barrow's treatment plans and appointment notes consistently referred to and coordinated with Plaintiff's other physicians.  Second, Dr. Barrow's opinion that Plaintiff could perform sedentary work was based on a Functional Capacity Evaluation ordered in June of 2009 by Plaintiff's worker's compensation claim examiner. (Tr. 226).  While there is no indication that Dr. Barrow was aware of the Administration's definition of sedentary work, it is similar to the definition of sedentary in the context of worker's compensation and the term's general meaning. *Frazier v. Dollar General*, 852 So.2d 1263, 1271 (La. App. 2 Cir. 2003) ("Sedentary duty was described as lifting a maximum of ten pounds with limited standing and walking."); *Futch v.*

*Horseshoe Casino*, 146 So.3d 818, 825, 828 (La. App. 2 Cir. 2014) ("*all* experts said she could do a sit-down job" — i.e., "released her to sedentary work").

Third, Dr. Barrow's opinion is not conclusory, as it consists of a detailed narrative describing Plaintiff's medical and treatment history, current conditions and treatment, as well as his plans for treating Plaintiff in the future. (Tr. 209-10).  Finally, Dr. Barrow did not opine that Plaintiff was "in fact disabled," as the ALJ suggests.  Instead, both Dr. Barrow and Dr. Isaza "found her to be functioning at a sedentary work capacity," in accordance with the FCE. (Tr. 209, 226, 227, 715, 753).  The ALJ, however, failed to explain what portions of Dr. Barrows' treatment records were inconsistent with that opinion.

Moreover, the ALJ did not mention, let alone discuss, Dr. Isaza's concurring opinion that Plaintiff could perform sedentary work. Dr. Isaza additionally instructed Plaintiff to avoid overhead reaching and lifting over 20 pounds. (Tr. 370, 734).  The ALJ's failure to discuss the record evidence showing that two of Plaintiff's long-term treating physicians found she was functioning at a capacity inconsistent with the RFC was in error, as those opinions are consistent with the objective medical findings contained in the record. *Kersey v. Astrue*, 614 F. Supp. 2d 679, 699-700 (W.D. Va. 2009) (substantial evidence did not support claimant with left shoulder impairment's ability to perform light work where the ALJ failed to consider medical opinions that either completely prohibited overhead reaching or limited the claimant's ability to reach with her left upper extremity).

For example, Plaintiff frequently exhibited decreased cervical range of motion in all axes (Tr. 216, 218, 227, 236, 238, 240, 247, 248, 252, 253, 254) and pain with cervical range of motion (Tr. 234, 227, 224, 223, 221, 218, 216, 211).  Examination of Plaintiff's left upper extremity often revealed diminished sensation and numbness (Tr. 261, 254, 253, 252, 248, 247,

244, 240, 236, 227, 224, 223, 221, 218, 217, 216), as well as weakness and reduced grip strength (Tr. 262, 537, 531, 679, 748).  Plaintiff also exhibited positive straight leg raise on either the left or bilaterally (Tr. 254, 255, 250, 248, 244, 240, 236, 218, 256), in addition to limited range of motion of the lumbar spine (Tr. 251, 248, 230, 228, 223, 221, 255, 254, 253, 252, 248, 244, 240, 218, 217, 216) and decreased sensation in the left lower extremity. (Tr. 254, 253, 252, 251, 250, 249, 248, 244, 240, 236, 230, 224, 223, 217, 258, 257).  As such, substantial evidence does not support the ALJ's RFC finding that Plaintiff could perform light work with occasional overhead reaching and remand is warranted.

### C.      Reliance on Medical Vocational Guidelines

Plaintiff also alleges that the ALJ erred in relying upon the Medical Vocational Guidelines (GRIDS) to find a significant number of jobs existed. (R. Doc. 11 at 17).  In this case, the ALJ found a non-exertional limitation as part of the RFC that Plaintiff could perform overhead reaching on an occasional basis.  Plaintiff asserts that other non-exertional limitations were also present and not adequately considered.  Although acknowledging the presence of a non-exertional limitation, the ALJ did not rely on the testimony of a vocational expert and instead applied the GRIDS at Step Five to find Plaintiff was not disabled.

As set forth above, because the Court determines that the ALJ's finding at Step 2 that any cervical and/or resulting extremity limitations were not severe, and the ALJ's rejection of the opinions of Plaintiff's treating physicians was not supported by substantial evidence, upon remand the Commissioner may find that Plaintiff's ability to reach overhead may be even more limited than that found by the ALJ.

The Court notes, however, that even a restriction to occasional overhead reaching, as found by the ALJ, may preclude application of the GRIDS. *See Selian v. Astrue*, 708 F.3d 409,

422 (2d Cir. 2013) (ALJ's failure to consult a VE to determine whether limitation to occasional overhead reaching significantly eroded the occupational base).  "Occasionally" is defined in the GRIDS as anywhere from "very little up to one-third of the time." SSR 83–10, 1983 WL 31251, at *5 (Jan. 1, 1983). Where on this spectrum Plaintiff falls is unclear from the record.  Reaching is "required in almost all jobs," and a reaching limitation "may eliminate a large number of occupations a person could otherwise do." SSR 85–15, 1985 WL 56857, at *7 (Jan. 1, 1985).

"[W]hether a reaching limitation affects a specific claimant's ability to find work is not a mere technical or formalistic point." *Selian*, 708 F.3d at 422.  On remand, the Commissioner should assess whether Plaintiff's limitations are adequately accounted for by a limitation to occasional overhead reaching or something more restrictive, and whether the testimony of a vocational expert may be needed in order to determine whether this non-exertional limitation significantly erodes the occupational base for the RFC assessed.

## V.    RECOMMENDATION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this opinion.

Signed in Baton Rouge, Louisiana, on June 15, 2016.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**